# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

SHELLEY ROSS, as REPRESENTATIVE §
of the ESTATE of TONY CHANCE ROSS, §
and SHELLEY ROSS and TONY ROSS, §
in Their Individual Capacity, §
　§
    PLAINTIFFS, §
　§
    vs. §      Civil Action No:
　§
THE CITY OF SULPHUR SPRING, §     4:16-cv-00095-ALM-CAN
TEXAS, HOPKINS COUNTY, TEXAS, §
SULPHUR SPRINGS LIEUTENANT §
BRAD HORTON, SULPHUR SPRINGS §
OFFICERS ADRIAN I. PRUITT, §
BRANDON S. MAYES, JOE D. SCOTT, §
SHERIFF'S DEPUTIES PAUL §
FENIMORE, NICK FLOYD, HOPKINS §
COUNTY JAIL ADMINISTRATOR §
KEVIN LESTER, JAILER JEFF §
HIGHTOWER, §
　§
    DEFENDANTS. §

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Plaintiffs, and brings this action under the United States Constitution and pursuant to 42 U.S.C. § 1983 to vindicate Chance Ross's rights, privileges and immunities secured to him by the Fourth and/or Fourteenth Amendments of the United States Constitution, and files this, their Original Complaint.

## JURISDICTION, VENUE, AND PARTIES

1.    Jurisdiction is conferred upon by this Court under and by 28 U.S.C. Sections 1331 and

1343.

2.      Venue is proper in the Eastern District of Texas upon 28 U.S.C. Section 1391 as all actions of which Plaintiffs complain occurred in Hopkins County, Texas.

3.      Plaintiff, SHELLEY ROSS as Representative of the Estate of Chance Ross (hereafter "Estate Representative"), is a citizen of the United States and within the jurisdiction of this court. Chance Ross is the decedent and victim of the action complained of in this suit, and he died intestate.  Chance is survived by his mother, father and two brothers who are his heirs at law. Chance died with very few personal possessions, and the few possessions he had, have been distributed by his family.  There are no debts pending.  At the time of filing of this action, there was no estate and there is no administration pending; and no administration of the estate is necessary or desired by the heirs.  The heirs have agreed for Shelley Ross, the mother, to be and serve as the representative of the Estate of Chance Ross.  Suit is brought to seek recovery for personal injuries, pain and suffering and other injuries suffered prior to his death and asserted by his Estate.

4.      Plaintiffs, SHELLEY ROSS and TONY ROSS, are the parents of Chance Ross and are citizens of these United States and are within the jurisdiction of the court.  Shelley and Tony Ross sue for damages suffered as a result of the wrongful death of their son, Chance Ross.

5.      Defendant CITY OF SULPHUR SPRINGS, TEXAS (hereafter "City" or "Police Department") is an incorporated municipality of the State of Texas and the county seat of Hopkins County.  The Sulphur Springs Police Department is a division of the City of Sulphur Springs, situated primarily in Hopkins County, Texas.  At all times relevant, the City of Sulphur Springs maintained, managed, and/or operated the Sulphur Springs Police Department.  Defendant has been served and has filed an Answer.

6.      Defendant HOPKINS COUNTY, TEXAS (hereafter Defendant "County" or "Hopkins County Sheriff's Department"), is a sub-division of the State of Texas.  Defendant has been served and has filed an Answer.

7.      At all times relevant, Defendant BRAD HORTON (hereafter "Horton") was an employee, agent or servant of the City of Sulphur Springs Police Department, served in a supervisory capacity, and was acting under the color of state law.  Defendant Pruitt is sued in his individual capacity for his actions undertaken while in the course and scope of his employment as such.  Defendant has been served and has filed an Answer.

8.      At all times relevant, Defendant ADRIAN I. PRUITT (hereafter "Pruitt") was an employee, agent or servant of the City of Sulphur Springs Police Department and was acting under the color of state law.  Defendant Pruitt is sued in his individual capacity for his actions undertaken while in the course and scope of his employment as such.  Defendant has been served and has filed an Answer.

9.      At all times relevant, Defendant BRANDON S. MAYES (hereafter "Mayes") was an employee, agent or servant of the City of Sulphur Springs Police Department and as acting under the color of state law.   Defendant Mayes is sued in his individual capacity for his actions undertaken while in the course and scope of his employment as such.  Defendant has been served and has filed an Answer.

10.     At all times relevant, Defendant JOE D. SCOTT (hereafter "Scott") was an employee, agent or servant of the City of Sulphur Springs Police Department and was acting under the color of state law.  Defendant Scott is sued in his individual capacity for his actions undertaken while in the course and scope of his employment as such.  Defendant has been served and has filed an Answer.

11.     At all times relevant, Defendant PAUL FENIMORE (hereafter "Fenimore") was an employee, agent or servant of the Hopkins County Sheriff's Department, served in a supervisory capacity, and were acting under the color of state law.  Defendant Fenimore is sued in his individual capacity for his actions undertaken while in the course and scope of his employment as such.  Defendant has been served and has filed an Answer.

12.     At all times relevant, Defendant NICK FLOYD (hereafter "Floyd") was an employee, agent or servant of the Hopkins County Sheriff's Department and was acting under the color of state law.  Defendant Floyd is sued in his individual capacity for his actions undertaken while in the course and scope of his employment as such.  Defendant has been served and has filed an Answer.

13.     At all times relevant, Defendant KEVIN LESTER (hereafter "Lester") was an employee, agent or servant of the Hopkins County Sheriff's Department, serving as the Jail Administrator and was acting under the color of state law.  Defendant Lester is sued in his individual capacity for his actions undertaken while in the course and scope of his employment as such.  Defendant may be served with summons at his place of business, the Hopkins County Sheriff's Department, 298 Rosemont, Sulphur Springs, Texas, 75482; telephone 903.438.4040.

14.     At all times relevant, Defendant JEFF HIGHTOWER (hereafter "Hightower") was an employee, agent or servant of the Hopkins County Sheriff's Department and was acting under the color of state law.  Defendant Hightower is sued in his individual capacity for his actions undertaken while in the course and scope of his employment as such.  Defendant has been served and has filed an Answer.

**FACTUAL ALLEGATIONS**

15.     Tony Chance Ross ("Chance Ross") was a 34-year-old single man, diagnosed with paranoid schizophrenia, and other medical diagnosis, and living alone in Sulphur Springs, Texas. He was assisted and supported by his family. The City of Sulphur Springs had a population of approximately 16,000 persons in March of 2015.

16.     Prior to the encounter with Sulphur Springs police officers the afternoon of March 6, 2015, Chance Ross had been arrested numerous times by both Sulphur Springs and Hopkins County Sheriff's Department law enforcement personnel. Thus, both Sulphur Springs police officers as well as Hopkins County jailers along with certain deputies had the opportunity to become familiar with Chance Ross's medical condition. These arrests primarily involved charges of public intoxication or disorderly conduct. Upon information and belief, Chance Ross had no history of exhibiting violence or aggression towards law enforcement officers during any of these encounters. The Hopkins County jail does not have medical personnel on staff at the jail facility and depend on local medical care providers for emergency health care assistance.

17.     During the morning hours of March 6, 2015, Chance Ross was released from the Hopkins County jail for time served, having been arrested the day before for public intoxication. He was permitted to leave the jail on foot, with temperatures just above freezing and dressed only in a shirt, pants and shoes – inadequate clothing for the weather conditions.

18.     Later in the afternoon of March 6, 2015, Chance Ross was located in the area of 610 Beckworth, in the City of Sulphur Springs, Texas. There was an initial call to emergency dispatch reporting an assault but upon arrival to the area, police officers did not discover any problems. Shortly thereafter, another call was received about a suspicious person. Several Sulphur Springs police officers responded, with one police officer running into Chance Ross who was shirtless and

without his shoes.  In response to calls from this initial encounter, to include reports of a TASER being deployed, additional officers arrived and they assisted with the seizure and arrest of Chance Ross.

19.     Upon the initial encounter by law enforcement personnel, Chance Ross was walking without a shirt, dressed only in blue jeans and socks, despite the very cold weather conditions. [1] At the time of this initial encounter, Chance Ross did not present a threat of harm to himself or others and was not engaged in any illegal activity.  Chance Ross was not identified by name as the suspicious person.  Chance Ross was identified and recognized by the first officer at the scene, Defendant Pruitt.  Having previously encountered Chance Ross, Defendant Pruitt knew or would have reason to know that Chance Ross suffered from mental illness.  Despite that knowledge and being the initial officer to encounter Chance Ross, and without additional officers on scene, and contrary to training he had received, he decided to engage Chance Ross.  Defendant Pruitt states he gave verbal commands to Chance Ross upon their initial encounter.

20.     Upon Chance Ross's failure to respond to the initial verbal commands, Defendant Pruitt immediately jumped to the use of an ECW; considered to be an intermediate "use of force" weapon.    Defendants Mayes and Scott arrived shortly after the initial contact by Pruitt, as they were monitoring police communications and were aware that an ECW (TASER) had been deployed as it was reported to Dispatch.  After having the ECW applied against him, and as he was being pursued and prior to his arrest, Chance Ross screamed at different intervals for help and that they were trying to kill him.

21.     According to statements by the Defendants who arrested Chance Ross, his behavior was erratic, sweating profusely, and apparently, to each officer independently, was indicative of

---

[1] The reported temperatures for March 5 and 6, 2015, in Sulphur Springs, Texas, are for March 5, 2015 - a low of 26ºF and a high of 38ºF and for March 6, 2015, a low of 24ºF and a high of 50 ºF.

someone who was under the influence of some drug to the extent it caused them fear. Defendant Mayes stated that Chance Ross was "sweating and his socks wet as if he went swimming with his clothing on" and noted that he had caught a glimpse of Tony (Chance) Ross's "eyes and it appeared as he was mentally out of it." Further, that "tony Ross also had a look as if he was looking right through me, nearly as if he was in a dazed state of mind." Defendant Scott observed that Chance Ross "didn't have a shirt on and was soaking wet." That he had a small amount of blood on his arm and that Chance Ross "was talking but not making sense" and "behaving erratically and was moving all over the place." Defendant Pruitt has stated that he "observed him (Ross) to be extremely intoxicated. He was sweating profusely. His eyes were not normal …."

22.    Defendants Pruitt and Mayes used excessive force against Chance Ross, which included the repeated use of an Electronic Control Weapon ("ECW"). Upon information, Chance Ross was subjected to the use of the ECW initially in the "probe" mode and then immediately thereafter twice in very rapid succession in the "drive stun" mode.[2] The application of the ECW was such that it was highly unlikely to be effective in incapacitating Chance Ross initially and succeed only in causing extreme pain in all three instances. The causation of pain by an ECW normally results in the subject attempting to move away from the pain source as an instinctive and defensive natural response. This is consistent with the actions described by these Defendants upon Chance Ross being subjected to the ECW.

23.    This use of excessive force caused Chance Ross severe physical and emotional injuries, as evidenced by his cries for help and that they were trying to kill him. Chance Ross was foaming at the mouth as he was handcuffed; and upon being arrested, he was kicked as he was placed into the

---

[2] Use of an ECW in a "probe" mode causes temporary neuromuscular incapacitation whereas use in the "drive-stun" mode is generally considered a pain compliance technique but does not cause neuromuscular incapacitation. Source: Various TASER® Operating Manuals, i.e., M26, X26C.

rear of one of the police cars, and then transported from the scene. At that time and place, Defendants Pruitt, Mayes and Scott knew that Chance Ross was in need of medical treatment for both physical injuries and suspected altered mental state or of a mental health crisis, and having been subject to repeated application of an ECW. Notwithstanding that they knew Chance Ross was in need of such treatment from a medical facility equipped to provide the necessary care, none of the officers at the scene either made such treatment available or took action to ensure Chance Ross was provided the necessary medical treatment by another officer. Chance Ross was instead, taken directly to the Hopkins County jail. Noteworthy is that upon the transporting officer's arrival at the jail, he was met by two Sheriff's deputies who escorted Chance Ross and the arresting officers into the jail.

24.     Despite Chance Ross's inadequate dress for the weather conditions, the observations of the officers of erratic behavior by Chance Ross, the presence of blood on his person, and the use of force, including the multiple applications of an ECW for an indeterminate amount of time (to the officers at that time), Chance Ross was transported to the Hopkins County jail and not a medical facility for evaluation and treatment. At all times relevant to the commissions and omissions described previously, Lt. Horton of the Sulphur Springs Police Department was aware of and monitoring officer communications of these events and as the supervisor on duty, should have taken action to ensure that Chance Ross was provided appropriate medical care under the circumstances and not been a passive bystander to the reports of his subordinates in their encounter and arrest of Chance Ross. Lt. Horton's inactions at the very outset to inquire as to the events involving Chance Ross as they unfolded, or immediately thereafter, evince inadequate supervision of the arrest and transport of Chance Ross; especially as Lt. Horton failed to intervene and requires the arresting and/or transporting officers to take Chance Ross for a medical evaluation prior to

being taken to the county jail.

25.      At all times relevant prior to the arrival and upon the arrival of Chance Ross on March 6, 2015 to the Hopkins County jail, Defendant Lester was Jail Administrator for the Hopkins County jail and was on-duty and present in the Hopkins County jail.  Upon arrival to the Hopkins County jail, Defendants Sergeant Fenimore and Jailer Hightower were directed by jail personnel other than Defendant Lester.to meet the inbound Sulphur Springs police officers transporting Chance Ross. The reason for requiring their assistance was due to a manning shortage at the jail.  The record indicates that no one informed Defendant Lester that there was a potentially dangerous arrestee inbound or that a request had been made for access to the jail by the south portal – which would require avoiding the booking or in-processing area; as well as the routine procedure of making inquiries into the arrestee's condition as a prerequisite to being accepted into the jail.

26.      At no time did any member of the Hopkins County jail inquire as to the need for the access to the jail by the south portal entrance or take steps to assess the arrestee under the circumstances. Jail video recording of the transfer of Chance Ross from the outside through the south portal entrance and the portion of the recording of Chance Ross along the hallway into the violent cell does not evince any indicators of threatening behavior or that would show that Chance Ross was behaving violently at the time.  Upon entry onto the jail facility, Hopkins County jail staff have primary responsibility for the arrestee and the well-being of the arrestee and other individuals on-site.

27.      At all times relevant to the events unfolding in the violent cell, Hopkins County jail personnel abandon their responsibilities in every aspect.  Defendants Pruitt, Mayes and Scott enter the jail, do not secure their weapons at any point, proceed to the violent cell and they "move" jail personnel out of the way so that they may place Chance Ross in the cell.  They collectively,

Defendants Pruitt, Mayes, and Scott, each a Sulphur Spring police officer, assumed the responsibility of stripping Chance Ross although they are out of their jurisdiction and operating outside the scope of their responsibilities while in the Hopkins County jail.[3]

28.     From the time Defendants Pruitt, Mayes, and Scott entered the jail facilities, they were, or should have been, acting under the authority and supervision of Hopkins County jail personnel. At the time of their entrance to the jail facility, Defendant Fenimore, a sergeant, was the ranking officer and had been tasked to meet the Sulphur Springs police officers at the door and assist them. Defendant Fenimore exercised neither professional judgment nor leadership in permitting police officers to present an arrestee who was allegedly behaving violently, was wet, with blood on his arm, and proceed to place Chance Ross in a jail cell without even a cursory inspection of his condition or determination of his suitability to be placed in the jail – especially in the absence of Chance Ross evincing any questionable or threatening conduct.  Similarly, Defendant Hightower, a jailer, similarly abandoned his responsibilities and permitted the Sulphur Springs police officers to enter the jail facility, armed with their weapons, escort, place, and violently strip an inmate of the jail.  Defendants Pruitt, Mayes, and Scott were neither trained nor qualified at the time of this incident in the policies, procedures, standards or practices of the Hopkins County Sheriff's Department jail operations.  This is further evinced by the fact that it is Defendant Mayes, a Sulphur Springs Police Officer, who instructs the other personnel, including Hopkins County Sheriff's sworn and jail personnel, to leave the violent cell "one by one".

29.     Moreover, at all times relevant, Defendants Fenimore and Hightower respectively permitted Defendants Pruitt, Mayes, and Scott to enter the fail facility while armed, to determine

---

[3] Upon information and belief, there is no inter-operability agreement or memorandum of understanding in effect at the time of this incident to permit Sulphur Springs police officers to enter and operate in the confines of the Hopkins County jail.

whether the arrestee was medically stable such that he could be safely placed in the jail, to determine the appropriate classification and placement of an inmate into a specific cell, then to strip an inmate who had neither been classified nor assessed and in the process, employ physical force in gaining compliance. More specifically these two Defendants permitted Defendant Scott to employ an ECW on seven separate occasions over an approximately 66 second span of time.

30.     It is not until Chance Ross apparently realizes that he is being placed in the violent cell that he pauses before entering the cell. He is easily pushed or thrown into the violent cell and despite being dressed only in pants and socks, still being hand-cuffed and having previously suffered multiple discharges from the ECW, was to have his pants and socks removed. During this process, Chance Ross is heard to be screaming repeatedly in pain and pleading. As a result, Chance Ross was subjected to further use of excessive force, to include renewed and repeated use of an ECW, by Defendants Pruitt, Mayes and Scott. In this instance, Chance Ross was again subjected to the use of an ECW initially in the "probe" mode and then an additional six times in the "drive stun" mode; all within the span of approximately 66 seconds, or one minute and six seconds.

31.     To place this in perspective, Defendant Scott was only in the violent cell with Chance Ross for approximately 3 minutes and 34 seconds, to include the time it took for Chance Ross to be pushed into the violent cell, repeatedly be subjected to an ECW, his clothes removed, left on the floor prone, and then Defendant Scott exiting the violent cell. Of approximately 214 seconds in the violent cell with Chance Ross, Chance was subjected to the ECW for 66 of those seconds, or approximately one-third of the time Defendant Scott spent in the jail cell with him.

32.     Defendant Scott states later that he continued to apply the ECW as Chance Ross did not seem to be incapacitated – despite the ECW being used in a drive-stun mode. Further, several of the Defendants in the violent cell while Chance Ross is being placed in it and his clothing removed,

despite being hand-cuffed, states that Chance Ross was continuing to kick and be violent. The more recent ECWs manufactured by TASER and in use by the Sulphur Springs Police Department warn that in the drive-stun mode, that due to the automatic reflex actions, most subjects will struggle to separate from the TASER device.[4] Defendant Scott's explanations justifying the continued use of an ECW reflects a clear lack of understanding of how to use a weapon considered an intermediate force weapon, and acknowledged by the manufacturer, TASER, as possibly leading to death if not used properly.

33.     At all times relevant to the use of force and the application of the ECW, Defendants Fenimore and Floyd assisted and participated in the restraint and excessive use of force under the circumstances. Upon information and belief, Defendants Fenimore and Floyd are trained and qualified to carry and operate an ECW as part of their issued equipment as a Hopkins County sworn law enforcement officer. As such, Defendant Fenimore and Floyd, individually and collectively, have the requisite knowledge as to the proper use of an ECW, the consequence to the subject of an ECW application, and that each use of an ECW is a separate use of force and requires a new evaluation of the circumstances and the appropriate use and level of force before renewed application of the ECW. Yet, they passively stood by as a person without the requisite authority used excessive force in a facility in which they exercised authority.

34.     It is to be noted that TASER® in its operations manual states that the use of the ECW should be kept to a minimum and in certain documents recommends no person be subjected to more than a total of 15 seconds of application from an ECW. On March 6, 2015, Chance Ross was subjected to the application of an ECW for no less than 74 second in the span of one hour.[5]

---

[4] Source: TASER® X26 Operating Manual.
[5] This time is calculated from the three uses of an ECW at the street scene (3, 3, and 2 seconds respectively) and the 66 seconds from the seven uses of the ECW in the jail.

35.     Upon the forcible removal of his clothing, Chance Ross was left lying face down on the jail floor.  At no time did any of the sworn law enforcement officers or jailers present upon the stripping of Chance Ross take any steps to assess his condition upon their departure; despite the repeated application of an ECW in their presence while simultaneously restraining Chance Ross.  Further, it is a mandatory requirement that inmates be immediately assessed upon admittance for mental disabilities.  Chance Ross's known mental health condition by personnel at the jail, his being discharged from the very same jail only hours earlier that day, and being subjected to the use of force immediately in these Defendants' presence made such an assessment critically important.  The lack of an assessment of even the most rudimentary form denied any jail staff or other personnel an understanding of what his existing status was and to be used as a base-line for determining whether his condition was stable, improving or as in this case, deteriorating.  More significantly, this abject failure on the part of these Defendants almost ensured that Tony Chance Ross would not recover from the health crisis he was clearly in at the time he was abandoned in the violent cell.

36.     Despite the hand-cuffs being removed, Chance Ross was left to remain in the exact same prone position for approximately 18 minutes before anyone consciously and knowingly looked in the jail cell through the small door window to determine his condition – realizing that he had not moved in that expanse of time and had actually died.

37.     While in custody at the Hopkins County jail, Hopkins County Sergeant Fenimore, Deputy Floyd, jailer Jeff Hightower and Sulphur Springs Lieutenant Brad Horton were aware of and/or informed of the use of force against Chance Ross.  These four Defendants knew or should have known that Chance Ross was in need of medical treatment for his physical injuries and mental

health issues. Notwithstanding their knowledge that Chance Ross was in need of such treatment from a properly equipped medical facility, Defendants Fenimore, Floyd, Hightower and Horton failed Chance Ross and refused to make such treatment available and refused to order other jail and police personnel to make such medical care available.

38. After approximately 18 minutes of being left unattended in the cell, Defendants Hightower, Mayes, Scott and Horton enter the cell. Chance Ross has not moved or otherwise changed position from lying face down since having his clothing forcibly removed, as well as the hand-cuffs.

39. Chance Ross skin pallor is pale, with blue lips, and he is found to barely have a pulse and attempts to resuscitate him are hindered as the jail's Automatic Electronic Defibrillator ("A.E.D.") is inoperable due to not being properly charged or having power. At no time did any of the personnel present, to include Defendants attempt CPR and Chance Ross died.

40. After being in custody of the Hopkins County jail for less than 25 minutes, Fire Department and emergency medical service personnel were called to provide care for Chance Ross and were able to revive him. Chance Ross was then transported to the Hopkins County Memorial Hospital and shortly thereafter, transferred to the Critical Care Unit of Trinity Mother Francis Hospital in Tyler, Texas.

41. Subsequent to his transfer to the hospital, numerous criminal charges were filed against Chance Ross. All charges stem from the encounter between Chance Ross and the arresting officers.[6]

42. By reason of the above-described acts and omissions of Pruitt, Mayes, Scott, Lester, Fenimore, Hightower and Horton, Chance Ross sustained physical and emotional injuries,

---

[6] I.e., Charge of Assaulting Public Servant [Penal Code 22.01(b)] as to Defendant Mayes; charge of Resisting Arrest, Search or Transport {Penal Code §38.03(a)} as to Defendant Pruitt; charge of Assaulting Public Servant [Penal Code 22.01(b)] as to Defendant Pruitt; and the charge of Attempt to Take Weapon from an Officer (Penal Code 38.14) as to Defendant Mayes.

including but not limited to great physical injuries and pain and suffering, emotional and mental pain and suffering, humiliation and other indignities, and ultimately to his death; all to his damage and harm in an amount to be ascertained. Unexplained in any of the statements provided by the Defendants and other witnesses to the street encounter and the jail cell placement, is how Chance Ross sustained a serious, deep contusion to his lower chest. The contusion, in all reasonable medical probability, is consistent with a strike to the area with a hard object or a foot strike. The contusion suggests a painful injury and in none of the recordings of Chance Ross of March 6, 2015, does he evince suffering from abdominal or thoracic pain or discomfort.

43.     The aforementioned acts of Pruitt, Mayes, Scott, Lester, Fenimore, Hightower and Horton were willful, wanton, malicious oppressive and done with reckless indifference to and/or callous disregard for the rights of Chance Ross and justify an award of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

44.     By reason of the above-described acts and omissions of Pruitt, Mayes, Scott, Lester, Fenimore, Hightower and Horton, Plaintiffs were required to retain an attorney to institute, prosecute and render legal assistance in the instant action so that Plaintiffs might vindicate the loss and impairment of Chance Ross's rights. By reason thereof, Plaintiffs request payment by Defendants of reasonable attorney fees and costs pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

**COUNT I**
**PLAINTIFFS AGAINST PRUITT, MAYES, SCOTT, FENMORE, and FLOYD**
**For EXCESSIVE FORCE**

45.     Plaintiffs hereby incorporate and re-allege paragraphs 1 through 44 as though fully set forth at length herein.

46.     During and after Chance Ross's seizure, Pruitt, Mayes, Scott, Fenimore, and Floyd used

excessive force against Chance Ross's person and which led to his death.

47.    There was no legal cause for Pruitt, Mayes, Scott, and Fenimore to use the degree of force employed against Chance Ross.

48.    By reason of Pruitt, Mayes and Scott's actions, Chance Ross was deprived of rights, privileges, immunities secured to him by the Fourth and/or Fourteenth Amendment to the Constitution of the United States and laws enacted thereunder. The physical violence inflicted upon Chance Ross was unnecessary, unreasonable, and excessive, and was therefore in violation of his Fourth and/or Fourteenth Amendment Rights. Therefore, defendants, and each of them, jointly and severally, are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.


## COUNT II
## PLAINTIFFS AGAINST SCOTT, FENIMORE, FLOYD, and HIGHTOWER for FAILURE TO PROTECT

49.    Plaintiffs hereby incorporate and re-allege paragraphs (1) through (48) as though fully set forth at length herein.

50.    Pruitt, Mayes and Scott used excessive force against Chance Ross, and were assisted by Defendants Fenimore and Floyd.

51.    There was no legal cause for Pruitt, Mayes and Scott to have used excessive force against Chance Ross.

52.    At different times during the seizure and arrest of Chance Ross, Scott had the ability and opportunity to stop Pruitt and Mayes from using excessive force against Chance Ross at the scene but failed to do so. These omissions contributed to the death of Chance Ross.

53.    Fenimore, Floyd and Hightower had the ability and opportunity to stop Scott from using excessive force against Chance Ross in the jail but failed to do so. Fenimore, as a Sergeant in the

Sheriff's Department, was the senior ranking person present and based upon information and belief, is trained in and knowledgeable as to the accepted and lawful uses of an ECW, yet failed to act.

54.     By reason of Pruitt, Mayes and Scott's actions, as well as the inactions of Pruitt, Mayes, Fenimore, Floyd and Hightower, Chance Ross was deprived of rights, privileges, immunities secured to him by the Fourth and/or Fourteenth Amendment to the Constitution of the United States and laws enacted thereunder.

55.     The physical violence inflicted upon Chance Ross was unnecessary, unreasonable, and excessive, and was therefore in violation of his Fourth and/or Fourteenth Amendment Rights. Therefore, defendants, and each of them, are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.


**COUNT III**
**PLAINTIFFS AGAINST PRUITT, MAYES, SCOTT, FENIMORE, FLOYD,**
**HIGHTOWER and HORTON for DENIAL OF MEDICAL CARE**

56.     Plaintiffs hereby incorporate and re-allege paragraphs (1) through (55) as though fully set forth at length herein.

57.     Pruitt, Mayes, Scott, Fenimore, Floyd, Hightower and Horton knew of Chance Ross's need for medical care on March 6, 2015, but did not make medical treatment available to him despite having the authority and duty to do so.  Through their actions and omissions, Pruitt, Mayes, Scott, Hightower and Horton unreasonably subjected Chance Ross to an unreasonable seizure in violation of his rights under the Fourth and/or Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

58.     The conduct of Pruitt, Mayes, Scott, Fenimore, Floyd, Hightower and Horton caused Chance Ross to experience pain, suffering, emotional distress, injury and ultimately, death.  The

failure to immediately provide medical care is a significant contributor to the deteriorating health of Chance Ross.  It is also in stark contrast to the response of August 2010, in which Chance Ross was found to be behaving similarly and the arresting officers immediately took him to the local emergency room for treatment and care.

59.     The conduct of Pruitt, Mayes, Scott, Fenimore, Floyd, Hightower and Horton was objectively unreasonable and undertaken knowingly and/or intentionally with malice, willfulness, and a deliberate indifference to the rights of Chance Ross.

60.     Pruitt, Mayes, Scott, Fenimore, Floyd, Hightower and Horton, and each of them, jointly and severally, are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.


### COUNT IV
### PLAINTIFFS AGAINST LESTER for FAILURE TO ADEQUATELY SUPERVISE and for INADEQUATE and DEFICIENT TRAINING

61.     Plaintiffs hereby incorporate and re-allege paragraphs (1) through (60) as though fully set forth at length herein.

62.     At all times relevant, Defendant Kevin Lester served as the Hopkins County Sheriff's Department Jail Administrator.  The commissions and omissions complained of as to Hopkins County Sheriff's Department law enforcement and jail personnel Fenimore, Floyd, and Hightower as described above were undertaken pursuant to the policies and/or practices of the Hopkins County jail.  The failure to assume responsibility and immediately assess Chance Ross was a further instance in which Chance Ross was denied an opportunity to timely receive appropriate medical care and this was a contributing factor to his death.

63.     On March 6, 2015, and despite years of experience and understanding as to the manpower needs of the jail on any given day, on March 6, 2015, the jail was inadequately staffed to perform

its core functions. The need for and reliance on sworn law enforcement personnel to assist the jail staff evinces a failure to adequately supervise the jail staff and ensure those personnel were able to perform their duties as they understood them.

64.     Prior to March 6, 2015, it was the responsibility and duty of Defendant Lester to ensure that the personnel assigned to work and operate the Hopkins County jail were not only properly trained, but maintained an adequate level of proficiency in the skill sets learned at one time. Further, it was the responsibility of Defendant Lester to ensure that the personnel assigned to work and operate the Hopkins County jail were properly supervised and knew and understood under what circumstances he or the supervisor on duty was to be informed of in-bound prisoners who were requiring special needs upon arrival, i.e., violent persons, medically questionable persons, persons suffering from acute alcohol intoxication, etc.

65.     At all times relevant, Defendants Fenimore, Floyd, and Hightower failed to assert and perform their responsibilities and duties in assuming control and custody of individuals presented for placement in the jail. These failures include taking control of Chance Ross upon entry into the jail facilities, the securing of weapons from visiting or outside law enforcement personnel, the assessing of physical and mental well-being consistent with the capabilities of the jail, and appropriate classification and placement of persons upon arrival to the jail.

66.     During the placement of Chance Ross in the violent cell, Defendants Fenimore, Floyd and Hightower were either inadequately trained and prepared to assert themselves in the capacity for which they were serving or knowingly turned a blind eye to the vicious and continuous use of the ECW against Chance Ross.

67.     The omissions and commissions of Defendants Fenimore, Floyd and Hightower evince a failure to ensure that personnel were adequately trained for the circumstances, maintained a

minimal degree of proficiency in those skills necessary for performance of their core responsibilities and were inadequately supervised in the performance of their duties and responsibilities leading up to the events of March 6, 2015.

## COUNT V
## PLAINTIFFS AGAINST the CITY OF SULPHUR SPRINGS
## For MONELL LIABILITY

68.     Plaintiffs hereby incorporate and re-allege paragraphs (1) through (67) as though fully set forth at length herein.

69.     The misconduct of Sulphur Springs Lieutenant and Police Officers described above was undertaken pursuant to the policies and practices of the City of Sulphur Springs Police Department in that as a matter of both policy and practice, the City of Sulphur Springs Department directly encourages the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

70.     As a matter of policy and practice, the Sulphur Springs Police Department facilitates the very type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Sulphur Springs Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Chance Ross.  Specifically, Sulphur Springs Police Officers accused of excessive force and/or violations of civil rights can be confident that they will not be investigated in earnest, and will refuse to recommend discipline or if required, to enforce discipline even where the Officer has engaged in excessive force or otherwise violated the civil rights of citizens.  In example, the Sulphur Springs police chief declared that the officers involved were not placed on any administrative leave or limitation as they had done nothing wrong, determining this prior to the conclusion of the investigation by the Department's own investigator and of the Texas Ranger

assigned to conduct the investigation.

71.     Municipal policy-makers are aware of, and condone and facilitate by their inaction, the failure of Sulphur Springs Police Department to properly investigate and discipline officers who have engaged in excessive force or otherwise violated the civil rights of citizens.

72.     The City of Sulphur Springs has failed to adequately train its police officers regarding the proper response to arrestees that are exhibiting an obvious need for medical care to treat injuries and/or mental illness.  This failure included a failure to train police officers in the proper use of ECWs (Tasers) against arrestees exhibiting obvious signs of mental illness or behavior suggestive of a loss of the use of their mental faculties.  As a result of this failure to train, the Lieutenant and Police Officers choose not to transport Chance Ross to a medical care facility or provider to treat his physical injuries and altered mental state, and instead chose to improperly use ECWs against Chance Ross on multiple occasions despite the known danger of using ECWs against persons with an altered mental status.  These decisions were made despite the fact that officers recognized Chance Ross at the very outset and knew of his history.  These acts and omissions were done with deliberate indifference to Chance Ross's constitutional rights.

73.     As a result of the excessive use of force, the unjustified denial of medical care, and the City of Sulphur Springs's policies and practices, Chance Ross experienced physical injuries, conscious pain and suffering, and emotional distress, and the Estate of Chance Ross incurred funeral expenses.

74.     Plaintiffs allege that these customs, policies and training deficiencies, described above, were contributing factors behind the violation of Chance Ross's rights.  Based upon the principles set forth in *Monell v. New York City Department of Social Services*, the City of Sulphur Springs is

liable for the harm done to Chance Ross as set forth above.

## COUNT VI
## PLAINTIFFS AGAINST HOPKINS COUNTY, TEXAS
### For MONELL LIABILITY

75.     Plaintiffs hereby incorporate and re-allege paragraphs (1) through (74) as though fully set forth at length herein.

76.     The actions and omissions of Hopkins County jailer Hightower were undertaken pursuant to the policies and practices of the City of Sulphur Springs Police Department in that as a matter of both policy and practice, the City of Sulphur Springs Department directly encourages the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference.

77.     The Sheriff of Hopkins County, as the policy-makers for the Hopkins County Sheriff's Department is aware of, and condone and facilitate by his inaction, the failure of the Hopkins County jail to properly respond to information, assess and examine individuals who are reported be behaving erratically or known to suffer from a mental health issue.  In this instance, Chance Ross had been arrested and jailed at the Hopkins County jail at least 17 times in the previous twelve plus years.  Jail medical records from Chance Ross's detention the day before evince the disclosure of his medical condition and suffering from some form of mental illness.

78.     The Hopkins County Sheriff's Office has failed to adequately train its jailers regarding the proper response to arrestees that are exhibiting an obvious need for medical care to treat injuries and/or mental illness.  This failure included a failure to train jailers as to the proper use of ECWs (Tasers) against arrestees/detainees exhibiting obvious signs of mental illness.  As a result of this failure to train, Defendant Hightower chose not transport Chance Ross to a medical provider to treat his physical injuries and altered mental state, and instead permitted the repeated, improper use of ECWs against Chance Ross.  The Sheriff's Department also failed to train its jail personnel

on the known danger of using ECWs against persons with an altered mental status. The decisions to use excessive force and not seek medical care were made despite the fact that Chance Ross had an extensive history at this facility. These acts and omissions were done with deliberate indifference to Chance Ross's constitutional rights.

79.     Moreover, The Hopkins County Sheriff's Office has failed to adequately train its jailers regarding the proper maintenance and support of emergency medical equipment, to wit, the A.E.D., which was inadequately powered and could not be employed to enhance the recovery of Chance Ross.

80.     Plaintiffs allege that these customs, policies and training deficiencies, described above, were contributing factors behind the violation of Chance Ross's rights. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, Hopkins County is liable for the harm done to Chance Ross as set forth above.


## COUNT VII
## PLAINTIFFS AGAINST PRUITT, MAYES, SCOTT, FENIMORE, FLOYD, HIGHTOWER and HORTON, For INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

81.     Plaintiffs hereby incorporate and re-allege paragraphs (1) through (80) as though fully set forth at length herein.

82.      In the manner described above, Pruitt, Mayes and Scott engaged in extreme and outrageous conduct by physically abusing Chance Ross.

83.     In the manner described above, Fenimore, Floyd, Hightower and Horton, by denying Chance Ross medical attention, engaged in extreme and outrageous conduct.

84.     The actions of Pruitt, Mayes, Scott, Fenimore, Floyd, Hightower and Horton were rooted in an abuse of power or authority, and undertaken with intent or knowledge that there was a high

probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

85.     The actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

86.     As a direct and proximate result of the willful and wanton conduct of Pruitt, Mayes, Scott, Hightower and Horton, Chance Ross suffered injuries, including severe emotional distress, and great conscious pain and suffering prior to his death.


## DAMAGES

87.     Due to the wrongful acts of Defendants, Tony Chance Ross was on at least two separate occasions denied the opportunity to receive timely and life-sustaining medical treatment. Further, his physical and mental conditions were substantially compromised and exacerbated by the improper and excessive use of ECWs or TASERs on two separate occasions. As a result, Chane Ross was caused to experience physical pain and suffering and mental anguish as a result of these experiences.   Furthermore, the wrongful acts of Defendants caused the Plaintiffs to incur significant expenses in protecting and vindicating the Constitutional rights of Chance Ross.   The actions by Defendants Pruitt, Mayes, Scott, Horton, Fenimore, Floyd, Lester and Hightower were carried out with a blatant disregard for Chance Ross's rights.   Consequently, Plaintiffs seek exemplary damages from Defendants Pruitt, Mayes, Scott, Horton, Fenimore, Floyd, Lester and Hightower in an amount as may be found to be proper and just by the trier of facts under the facts and circumstances of this case.

88.     Plaintiff is entitled to damages pursuant to 42 U.S.C. §1983.

89.     For violations of rights guaranteed to the Plaintiff as set forth above Plaintiffs sues Defendant Pruitt for $350,000 or a sum as considered appropriate by the trier of fact.

90.     For violations of rights guaranteed to the Plaintiff as set forth above Plaintiffs sues Defendant Mayes for $250,000 or a sum as considered appropriate by the trier of fact.

91.     For violations of rights guaranteed to the Plaintiff as set forth above Plaintiffs sues Defendant Scott for $1,000,000 or a sum as considered appropriate by the trier of fact.

92.     For violations of rights guaranteed to the Plaintiff as set forth above Plaintiffs sues Defendant Fenimore for $400,000 or a sum as considered appropriate by the trier of fact.

93.     For violations of rights guaranteed to the Plaintiff as set forth above Plaintiffs sues Defendant Floyd for $100,000 or a sum as considered appropriate by the trier of fact.

94.     For violations of rights guaranteed to the Plaintiff as set forth above Plaintiffs sues Defendant Lester for $400,000 or a sum as considered appropriate by the trier of fact.

95.     For violations of rights guaranteed to the Plaintiff as set forth above Plaintiffs sues Defendant Hightower for $200,000 or a sum as considered appropriate by the trier of fact.

96.     For violations of rights guaranteed to the Plaintiff as set forth above Plaintiffs sues Defendant Hopkins County, Texas for $750,000 or a sum as considered appropriate by the trier of fact.

97.     For violations of rights guaranteed to the Plaintiffs as set forth above Plaintiffs sues Defendant City of Sulphur Springs, Texas for $2,000,000 or a sum as considered appropriate by the trier of fact.

98.     Plaintiffs would show that the conduct in this matter by Defendant Pruitt was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff

sues Defendant Pruitt for an amount as may be proven appropriate upon the evidence developed in this action.

99.     Plaintiffs would show that the conduct in this matter by Defendant Mayes was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff sues Defendant Mayes for an amount as may be proven appropriate upon the evidence developed in this action.

100.     Plaintiffs would show that the conduct in this matter by Defendant Scott was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff sues Defendant Scott for an amount as may be proven appropriate upon the evidence developed in this action.

101.     Plaintiffs would show that the conduct in this matter by Defendant Horton was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff sues Defendant Horton for an amount as may be proven appropriate upon the evidence developed in this action.

102.     Plaintiffs would show that the conduct in this matter by Defendant Fenimore was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff sues Defendant Fenimore for an amount as may be proven appropriate upon the evidence developed in this action.

103.     Plaintiffs would show that the conduct in this matter by Defendant Floyd was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff sues Defendant Floyd for an amount as may be proven appropriate upon the evidence developed in this action.

104.    Plaintiffs would show that the conduct in this matter by Defendant Lester was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff sues Defendant Lester for an amount as may be proven appropriate upon the evidence developed in this action.

105.    Plaintiffs would show that the conduct in this matter by Defendant Hightower was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff sues Defendant Hightower for an amount as may be proven appropriate upon the evidence developed in this action.

106.    Plaintiffs seeks such other and further relief, general and special, legal and equitable, to which he may show himself justly entitled.

107.    As a result of the actions of each Defendant, Plaintiffs have been required to employ the undersigned attorney to represent him in obtaining the relief requested and Plaintiffs request that this Court enter judgment against Defendants for reasonable attorney's fees and expenses pursuant to 42 U.S.C. §1988 for the services for the undersigned attorney performed and to be performed.

108.    Plaintiff request costs of court.

109.    Plaintiff requests prejudgment interest.

110.    Plaintiff requests post judgment interest.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs, by and through their attorney, requests judgment as follows against the Defendants, and each of them:

1.    That the Defendants be required to pay Plaintiffs' general damages, including emotional distress, medical and funeral expenses in a sum to be ascertained;

2.    That the Defendants be required to pay Plaintiffs' special damages;

3.    That the Defendants be required to pay Plaintiffs' attorney fees and expenses pursuant to

Section 1988 of Title 42 of the United State Code, the Equal Access to Justice Act or any other applicable provision;

4.  That the Defendants, other than the City of Sulphur Springs and Hopkins County, be required to pay punitive or exemplary damages in a sum to be ascertained; and

5.  That the Plaintiffs have such other and further relief as this Court may deem just and proper.

**PLAINTIFFS HEREBY REQUEST A TRIAL BY JURY.**

Dated:  1st day of March, 2017.

Respectfully submitted,

   /s/ David D. Davis
David D. Davis
State Bar No. 00790568

LAW OFFICE OF DAVID D. DAVIS, PLLC
P.O. Box 542915
Grand Prairie, Texas 75054-2915
972.639.3440 Telephone
972.639.3640 Facsimile
ddd@dddavislaw.net

**CERTIFICATE OF SERVICE**

This pleading is being filed pursuant to LR 7(k).  I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sends a "Notice of Electronic Filing" to the attorneys of record who have all consented in writing to accept this Notice as service of this document by electronic means.

 /s/ David D. Davis
David D. Davis